UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

JOHN DOE,                                                              Plaintiff,

v.                                          Civil Action No: 1:16-cv-74-DJH-HBB

GEORGE DORDONI,                                            Defendant.

\* \* \* \* \*

**<u>ORDER</u>**

Plaintiff John Doe objects to Magistrate Judge H. Brent Brennenstuhl's Findings of Fact, Conclusions of Law, and Recommendation that Defendant George Dordoni's motion for summary judgment be granted.  (Docket No. 123; *see* D.N. 122)  Doe also moves to strike Dordoni's response to his objections.  (D.N. 125)  After careful review, and for the reasons explained below, the Court will deny the motion to strike, overrule Doe's objections, adopt Judge Brennenstuhl's report and recommendation, and grant Dordoni's motion for summary judgment.

**I.**

As noted by Judge Brennenstuhl, the parties do not dispute the material facts of this case. (D.N. 122, PageID # 1286)  Doe, who was born in Saudi Arabia and was a citizen of Pakistan at the time this suit was filed[1], moved to Kentucky in 2013 to attend Western Kentucky University (WKU) on a valid F-1 student visa.  (*Id.*)  Although Doe was raised Muslim, after coming to the United States he developed an interest in Christianity.  (*Id.*)  Doe told his uncle about this interest; his uncle informed Doe's father, who withdrew his financial support, leaving Doe unable to enroll in classes for the Spring 2015 semester.  (*Id.*, PageID # 1287)

---

[1] Doe has since been granted asylum and is now a lawful permanent resident in the United States. (D.N. 122, PageID # 1289)

Doe's father requested that he return to Saudi Arabia in early 2015. (*Id.*) When Doe returned, his family forcibly detained him in an attempt to change his religious beliefs. (*Id.*) After three months, Doe pretended to renounce his interest in Christianity, and his father agreed to allow him to return to WKU. (*Id.*, PageID # 1288)

WKU uses a program called iStart to track the status of international students. (*Id.*) The government, in turn, uses a program called SEVIS to track the status of international students within the United States. (*Id.*) iStart is designed to interface with SEVIS, and "[t]he compatibility of the iStart program with SEVIS allows the government and WKU to exchange international student information and records." (*Id.*)

In February 2015, iStart malfunctioned and failed to update student records in SEVIS, and WKU attempted to fix the issue. (*Id.*) Following the attempted fix, Dordoni, WKU's Senior International Student and Scholar Advisor, checked a random selection of student records for accuracy, and by March 2015 he believed the issue had been resolved. (*Id.*, PageID # 1287–88) In May 2015, while still in Saudi Arabia, Doe asked Dordoni if he was cleared to return to the United States. (*Id.*, PageID # 1288) Dordoni checked Doe's record in iStart but did not additionally check SEVIS. (*Id.*, PageID # 1288–89) Based on the information in iStart, Dordoni informed Doe that his visa remained active and that Doe could return to the United States. (*Id.*, PageID # 1289)

Several weeks later, Doe flew back to the United States. (*Id.*) But SEVIS had incorrectly listed Doe's visa as inactive, and Doe was detained by U.S. Customs and Border Patrol (CBP) upon arrival. (*Id.*) Doe informed CBP about his conversion to Christianity and his desire to remain in the United States and thereafter was treated as an applicant for asylum. (*Id.*) Doe was transferred to an ICE holding facility, where he was held in immigration custody for nearly a

2

month; he ultimately obtained asylum status and was permitted to remain in the United States.[2] (*Id.*)

Doe brought a negligence claim against Dordoni, asserting that Dordoni was negligent in providing Doe with inaccurate advice regarding his eligibility to enter the United States.[3]  (*See* D.N. 1)  Dordoni moved for summary judgment (D.N. 82), and Judge McKinley granted the motion on the basis of qualified immunity.[4]  (D.N. 102)  The Sixth Circuit reversed and remanded (D.N. 107), and the parties resubmitted their summary-judgment briefing for the Court to consider the motion on alternative grounds not addressed in the previous ruling.  (D.N. 112)  The matter was referred to Magistrate Judge H. Brent Brennenstuhl (D.N. 116), who issued his Findings of Fact, Conclusions of Law, and Recommendation on April 30, 2021, recommending that Dordoni's motion for summary judgment be granted.  (D.N. 122)  Doe timely filed objections (D.N. 123), and Dordoni responded.  (D.N. 124)  Doe then moved to strike Dordoni's response.  (D.N. 125)

---

[2] Federal district courts have subject-matter jurisdiction over suits "between . . . citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2).  But this form of diversity jurisdiction does not extend to "an action between citizens of a State and citizens or subjects of a foreign state *who are lawfully admitted for permanent residence in the United States* and are domiciled in the same State." *Id.* (emphasis added).  Whether diversity jurisdiction exists, however, depends on the parties' citizenship "at the time of the filing of a lawsuit." *Curry v. U.S. Bulk Transp., Inc.*, 462 F.3d 536, 540 (6th Cir. 2006).  Here, Doe obtained asylum status in September 2016 and eventually became a lawful permanent resident.  (D.N. 84-6; D.N. 122, PageID # 1289)  Yet Doe filed the complaint in this matter in May 2016, when he was still an "Asylum Applicant" and a citizen of Pakistan.  (D.N. 1, PageID # 2, 6; D.N. 122, PageID # 1286)  "[A]t the time of the filing" of this lawsuit then, *Curry*, 462 F.3d at 540, Doe was a "citizen[] or subject[] of a foreign state," 28 U.S.C. § 1332(a)(2).  The Court therefore has jurisdiction to hear this case. *Id.*

[3] Doe's claim is based upon the presumption that Dordoni had access to the same information in SEVIS as that available to U.S. Customs and Border Patrol; and that even assuming Dordoni had that same access, that the problem with Doe's status in SEVIS would have been apparent at the time that Doe asked Dordoni to check.  It is unclear from the record and arguments before the Court whether either of these contentions can be substantiated.  At the summary judgment stage, however, the Court will, as it must, construe all evidence and draw all reasonable inferences in favor of Doe, the nonmovant. *See Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013).

[4] This case was reassigned to the undersigned judge in September 2020.  (*See* D.N. 115)

The Court subsequently requested supplemental briefing on the issue of whether Dordoni owed Doe a duty for purposes of Doe's negligence claim (D.N. 130); the parties have now submitted their supplemental briefs.  (D.N. 131; D.N. 132)

## II.

### A.  Motion to Strike

The Court first addresses Doe's motion to strike Dordoni's response to his objections. (D.N. 125)  Doe argues that pursuant to Local Rule 72.2, "a party is not allowed to file any response to a written objection unless directed to do so by the Court," and he states that Dordoni filed his response "without a direction from the Court."  (*Id.*, PageID # 1343)  But Local Rule 72.2 only applies to rulings on non-dispositive motions, and Dordoni's motion for summary judgment is unquestionably dispositive.  *See* L.R. 72.2; *Crawford v. Ernspiker*, No. 3:06-CV-579, 2007 WL 1034972, at *2 (W.D. Ky. Mar. 28, 2007).  And both the Federal Rules of Civil Procedure and relevant statutory authority clearly permit parties to file responses when an opposing party objects to a magistrate judge's recommendation on a dispositive motion.  *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C).  Doe's motion to strike will therefore be denied.

### B.  Objections

When reviewing a report and recommendation, the Court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  The Court may adopt without review any portion of the report to which no objection is made.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Upon review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).  Accordingly, the Court will review de novo the portions of Judge Brennenstuhl's recommendation to which Doe objects.

4

Kentucky law defines negligence as "the failure to discharge a legal duty, whereby injury occurs."[5] *Warren v. Winkle*, 400 S.W.3d 755, 758 (Ky. Ct. App. 2013) (quoting *Franklin v. Tracy,* 77 S.W. 1113, 1115 (Ky. 1904)). "In any negligence action under Kentucky law, a plaintiff must prove the existence of a duty, breach thereof, causation, and damages," and "[t]he existence of a duty is a question of law for the court." *Boland-Maloney Lumber Co. v. Burnett*, 302 S.W.3d 680, 686 (Ky. Ct. App. 2009); *see also Coleman v. River Valley Behav. Health, Inc.*, No. 4:10-CV-96-JHM, 2013 WL 228449, at *3 (W.D. Ky. Jan. 22, 2013) (citing *Mullins v. Commonwealth Life Ins. Co.,* 839 S.W.2d 245, 247 (Ky. 1992)). "In a professional negligence case, the burden of proof is generally on the plaintiff to establish the applicable standard of care and the breach thereof by

---

[5] Both parties presume that Kentucky's substantive law applies to Doe's negligence claim against Dordoni. (*See, e.g.*, D.N. 82, PageID # 280, 283; D.N. 92, PageID # 878, 880)  Judge Brennenstuhl likewise relies on Kentucky law to reach his conclusions of law.  (*See, e.g.*, D.N. 122, PageID # 1294)  But the Court must still determine which state's substantive law governs this case, especially since Doe's alleged injury—namely, "the deprivation of his personal liberty, economic loss, [and] emotional pain and suffering" stemming from his month-long detention by immigration authorities (D.N. 1, PageID # 7)—occurred outside of Kentucky; Doe was arrested and temporarily detained at Washington Dulles International Airport in northern Virginia and later transferred to an ICE holding facility in Farmville, Virginia (D.N. 122, PageID # 1289).  A federal district court sitting in diversity must look to the choice-of-law rules used by courts in the forum state to determine which state's substantive law applies to a particular case.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Fortunately, the choice-of law analysis here is straightforward.  For tort actions like this one, "Kentucky case law clearly holds that any significant contact with Kentucky is sufficient to allow an application of Kentucky law." *Reichwein v. Jackson Purchase Energy Corp.*, 397 S.W.3d 413, 416 (Ky. Ct. App. 2012) (quoting and reaffirming the reasoning from an earlier unpublished opinion).  Put another way, "if there are significant contacts—not necessarily the most significant contacts—with Kentucky," then Kentucky law should apply.  *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972) (holding that Kentucky law applied to a case involving the death of a Kentucky resident in a car accident despite the fact that the tortfeasor was domiciled in Ohio and the fatal accident occurred in Ohio).  Here, the parties' contacts with Kentucky are no doubt significant.  The defendant works and resides in Kentucky; the plaintiff was an engineering student at Western Kentucky University at the time he was detained by immigration authorities; and the communications between the plaintiff and the defendant that gave rise to this suit concerned the plaintiff's eligibility to return to the United States from abroad to complete his studies in Kentucky.  (D.N. 122, PageID #1287–1289).  Given these "significant contacts" with the state, Kentucky law applies here.  *See Foster*, 484 S.W.2d at 829.

expert testimony," unless "the experience or common knowledge of laymen is extensive enough to recognize or to infer negligence from the facts." *Coleman*, 2013 WL 228449, at *2–3.

Judge Brennenstuhl found "that advising university students on immigration matters, and particularly with regard to whether it is sufficient to rely on the university's immigration tracking system[] as opposed to SEVIS when providing advice, is not within the knowledge and experience of laypersons such that they could recognize negligence without expert assistance." (D.N. 122, PageID # 1294)  He therefore concluded that Doe needed expert testimony to establish "that Dordoni's failure to verify Doe's immigration status in SEVIS in addition to checking iStart did not comport 'with the standard of conduct customary in the profession under the circumstances.'" (*Id.*, PageID # 1294–95 (quoting another source))  Since the Court had previously excluded Doe's expert witness (D.N. 121), Judge Brennenstuhl found that Doe could not establish that Dordoni breached the standard of care, and that Dordoni should therefore be granted summary judgment. (D.N. 122, PageID # 1295)  In his objection, Doe argues that his "cause of action in this case is for common-law negligence, which does not require expert testimony."  (D.N. 123, PageID # 1314)  Additionally, Doe argues that Dordoni owed him a duty because "Dordoni voluntarily assumed a duty to Doe by rendering a service to him on which he reasonably relied."  (D.N. 132, PageID # 1376)

Regardless of whether expert testimony is required to establish breach, summary judgment is nonetheless warranted here because Doe has not met his burden of proving that Dordoni owed him a duty. *See Boland-Maloney Lumber Co.*, 302 S.W.3d at 686.  Doe argues that Dordoni owed him a voluntarily-assumed duty because "Dordoni voluntarily assumed the duty to render a service to Doe in advising him of his immigration status before Doe attempted to travel back to the United States."  (D.N. 132, PageID # 1378)  Under Kentucky law, it is "well-settled" that "one who

volunteers to act, though under no duty to do so, is charged with the duty of acting with due care." *Ostendorf v. Clark Equip. Co.*, 122 S.W.3d 530, 538 (Ky. 2003) (quoting *Sheehan v. United Servs. Auto. Ass'n*, 913 S.W.2d 4, 6 (Ky. Ct. App. 1996)). And by extension, "a breach of a voluntarily assumed duty can give rise to tort liability." *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 847 (Ky. 2005). The Kentucky Supreme Court has adopted the Restatement (Second) of Torts "regarding the elements necessary for liability for the breach of a voluntarily assumed duty." *Morgan v. Scott*, 291 S.W.3d 622, 632 (Ky. 2009). Specifically, § 323 of the Restatement provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (Am. Law Inst. 1965).[6]

---

[6] In *Morgan v. Scott*, the Kentucky Supreme Court observed that it had "previously adopted Restatement (Second) of Torts § 324A regarding the elements necessary for liability for the breach of a voluntarily assumed duty" rather than § 323, the section quoted above. *Morgan*, 291 S.W.3d at 632 (citing *Ostendorf*, 122 S.W.3d at 538–39). Section 323 addresses the duty between "[o]ne who undertakes, gratuitously or for consideration, to render services to another" and the direct recipient of those services. Restatement (Second) of Torts § 323. Section 324A, on the other hand, concerns the duty between "[o]ne who undertakes, gratuitously or for consideration, to render services to another" and third parties—that is, persons who are not the direct recipients of the services rendered. *Id.* § 324A. The former section is more applicable to this case because Doe asserts that Dordoni "voluntarily assumed [a] duty" owed directly to Doe. (D.N. 132, PageID # 1378) But the Court's analysis would be the same regardless of which particular Restatement section applies. The lone basis for liability that Doe asserts is that he "undoubtedly relied on" and was ultimately "harmed by" Dordoni's "voluntarily assumed duty." (*Id.*, PageID # 1379). And importantly, this reliance-based basis for liability stemming from a voluntarily-assumed duty appears in both § 323 and § 324A. *See* Restatement (Second) of Torts § 323(b); *id.* § 324A(c); *see also Wilburn v. United States*, 616 F. App'x 848, 853 n.1 (6th Cir. 2015) (unpublished) (noting that, in a case addressing whether a defendant voluntarily assumed a duty, applying § 323 rather than § 324A "d[id] not alter [the court's] analysis" because "the pertinent requirements of both [sections] are identical").

Here, Doe argues that "Dordoni 'actually and specifically' undertook to render services to Doe, namely, providing information about Doe's immigration status and advising Doe of his ability to re-enter the U.S." (D.N. 132, PageID # 1378)  According to Doe, once Dordoni "chose . . . to give advice and assistance to Doe," Dordoni was "required to provide that assistance in a reasonable and careful manner." (*Id.*)  Doe further contends that he "undoubtedly relied on" and was ultimately "harmed by" Dordoni's voluntarily-assumed undertaking, thus "meeting one of the . . . bases for imposing an assumed duty" under the Restatement. (*Id.*, PageID # 1378–79 (citing *Ostendorf*, 122 S.W.3d at 538))  And Doe insists that "[t]he question of whether" Dordoni performed this assumed duty "with reasonable care is a question of fact for the jury and is not appropriate for summary judgment." (*Id.*, PageID # 1378)  Even assuming all of this to be true, however, it is beside the point because a defendant is only liable for breach of a voluntarily-assumed duty that results in "physical harm." *Morgan*, 291 S.W.3d at 632 (quoting Restatement (Second) of Torts § 324A).  Yet Doe does not claim that he suffered physical harm as a result of Dordoni's actions, nor does he seek damages for physical harm.

"Physical harm" as used in the Restatement "denote[s] the physical impairment of the human body, or of land or chattels."  Restatement (Second) of Torts § 7.  Moreover, "physical impairment of the human body"—which the Restatement also calls "bodily harm," *see id.* § 7 cmt. e—includes, more specifically, "any physical impairment of the condition of another's body, or physical pain or illness." *Id.* § 15.  "Physical harm," in short, requires that the "structure or function of any part" of the body be "altered" in some concrete, tangible way. *See id.* § 15 cmt. a.

The Kentucky Supreme Court has cited the Restatement's description of "physical harm" with approval.  Indeed, "a cause of action in tort" under Kentucky law "requires a present physical injury to the plaintiff." *Wood v. Wyeth-Ayerst Labs., Div. of Am. Home Prods.*, 82 S.W.3d 849,

852 (Ky. 2002).  And the Kentucky Supreme Court has noted that the Restatement's definition of "physical harm" is "on point" for purposes of determining whether a plaintiff's alleged harm "constitutes [a] present physical injury" sufficient to support a negligence claim.  *See id.* at 855. Thus, under both the Restatement and Kentucky law, a viable negligence claim requires some showing that the plaintiff has suffered tangible physical harm.  For instance, the plaintiffs in all of the cases that Doe cites in support of his argument that Dordoni voluntarily assumed a duty to assist Doe with reasonable care (D.N. 132, Page ID # 1376–78) undoubtedly suffered what can only be described as "physical harm" or a "present physical injury."[7]  In contrast, where plaintiffs bringing a negligence claim have sustained "no present physical injury," courts applying Kentucky law have reached a straightforward conclusion: "there can be no cause of action."  *See Wood*, 82 S.W.3d at 855–56 (holding that a plaintiff who ingested a diet medication that was later found to have harmful side effects failed to state a negligence claim because she had not yet experienced illness or physical harm at the time of her suit); *Powell v. Tosh*, 929 F. Supp. 2d 691, 709 (W.D. Ky. 2013) (holding that plaintiffs had "failed to present personal injuries to support a negligence claim" because they "ha[d] suffered no physical harm" as a result of odors from the defendant's neighboring hog farm).

---

[7] *See Grand Aerie Fraternal Order of Eagles*, 169 S.W.3d at 843 (involving an estate plaintiff suing on behalf of a decedent killed in a car collision after being served alcohol at a local chapter of the defendant, a fraternal organization); *Ostendorf*, 122 S.W.3d at 532 (involving a plaintiff who was "severely injured" when the forklift he was driving, which was manufactured by the defendant, tipped over and pinned the plaintiff's foot to the ground); *Sheehan*, 913 S.W.2d at 5 (involving an estate plaintiff suing on behalf of a decedent who was mortally wounded by a gunshot from a revolver found on a property insured by the defendant); *Estep v. B.F. Saul Real Estate Inv. Tr.*, 843 S.W.2d 911, 912 (Ky. Ct. App. 1992) (involving plaintiffs who slipped and injured themselves on an icy sidewalk that the defendants were supposed to maintain); *Johnson v. Brey*, 438 S.W.2d 535, 536 (Ky. 1969) (involving a six-year-old plaintiff whose eye was seriously injured when a branch held by the defendant struck the plaintiff in the face).

In his complaint, Doe alleges that Dordoni's conduct caused Doe to suffer "the deprivation of his personal liberty, economic loss, [and] emotional pain and suffering." (D.N. 1, PageID # 7) And in his objections to Judge Brennenstuhl's report and recommendation, Doe reiterates that he is "seek[ing] damages for deprivation of his personal liberty due to his detention" and for the "anxiety and humiliation" that resulted from him "having been wrongfully detained." (D.N. 123, PageID # 1318, 1320) Yet while Doe's month-long detention by immigration authorities was no doubt a distressing ordeal, the alleged injuries he suffered as a result of that detention simply do not constitute the sort of "physical harm" necessary under Kentucky law to sustain his claim that Dordoni breached a voluntarily-assumed duty. *See* Restatement (Second) of Torts § 323.

Start with the core of Doe's alleged injuries, the "deprivation of his personal liberty." (D.N. 1, PageID # 7; D.N. 123, PageID # 1318) While Doe was detained at an ICE holding facility, he was "treated like a prisoner, deprived of his personal belongings, forced to shower and use the restroom in front of all the other prisoners, live and sleep in a dormitory with eighty-four other men, and wear government issued clothing." (*Id.*, PageID # 1311) Such treatment, Doe says, "resulted in humiliation [and] embarrassment." (*Id.*, PageID # 1318) But nowhere does Doe say that his detention also resulted in "the physical impairment" of his body or caused him "physical pain or illness." Restatement (Second) of Torts §§ 7(3), 15. Furthermore, while Doe's detention standing alone might be sufficient to bring a claim for false imprisonment, an intentional tort, *see Wal-Mart Stores, Inc. v. Mitchell*, 877 S.W.2d 616, 617 (Ky. Ct. App. 1994), his negligence claim requires additional proof that he suffered "physical harm" as a consequence of being detained. *See Morgan*, 291 S.W.3d at 632. Doe has failed to even allege physical harm here, let alone offer enough evidence of such harm to survive summary judgment.

Doe's negligence claim is not saved by the "economic loss" and "emotional pain and suffering" he endured as a result of his detention.  (D.N. 1, PageID #7)  Regarding the former, even assuming that the legal fees that Doe spent to navigate the asylum system were a foreseeable consequence of Dordoni's purportedly negligent advice about the status of  Doe's nonimmigrant student visa (*see* D.N. 124, PageID # 1335–37), economic harm is categorically different from the sort of physical harm needed to bring a negligence claim in Kentucky.  *See Wood*, 82 S.W.3d at 854 (asserting that "[t]here can be no question but that" Kentucky case law "require[s] a *physical injury* for a cause of action" in tort) (emphasis added).   As for Doe's "emotional pain and suffering," the Restatement makes clear that "[t]he minute disturbance of the nerve centers caused by fear, shock or other emotions"—including, presumably, the "humiliation [and] embarrassment" that Doe suffered while being detained (D.N. 123, PageID # 1318)—"does not constitute" physical harm.  Restatement (Second) of Torts § 15 cmt. b.  Doe conceivably could have suffered "physical harm" if the humiliation and embarrassment he endured while detained "result[ed] in some appreciable illness" or "ha[d] some other effect upon the physical condition" of his body.  *Id.*  But Doe has offered no evidence whatsoever that his "emotional pain and suffering" (D.N. 1, PageID # 7) manifested itself as a "physical impairment."[8]  *See* Restatement (Second) of Torts § 7(3).

At bottom, for Doe to prevail on his claim that Dordoni breached a voluntarily-assumed duty, Kentucky law requires Doe to have suffered some form of "physical harm."  *See Morgan*, 291 S.W.3d at 632.  Yet Doe has neither alleged nor demonstrated that he experienced such harm

---

[8] Even if Doe had claimed that his emotional pain and suffering had caused him "physical impairment" or "physical pain or illness," Restatement (Second) of Torts § 15, Judge Brennenstuhl rightly points out that Doe still would have failed to support what effectively amounts to a claim for "'severe' or 'serious' emotional injury" with "medical or scientific evidence" (D.N. 122, PageID # 1302), as is required by Kentucky law.  *See Osborne v. Keeney*, 399 S.W.3d 1, 17–18 (Ky. 2012) ("[A] plaintiff claiming emotional distress damages must present expert medical or scientific proof to support the claimed injury or impairment.").

as a result of Dordoni's conduct.  Doe has thus failed to meet his burden of "prov[ing] the existence of a duty," *Boland-Maloney Lumber Co.*, 302 S.W.3d at 686, and his negligence claim necessarily fails as well.  Thus, summary judgment for Dordoni is appropriate, and Doe's objection will be overruled.[9]  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (concluding that Fed. R. Civ. P. 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case").

---

[9]As this issue is dispositive of Dordoni's summary-judgment motion, the Court need not consider Doe's objection to Judge Brennenstuhl's finding on damages.  (*See* D.N. 123, PageID # 1318)

**III**.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     The Findings of Fact, Conclusions of Law, and Recommendation of Magistrate Judge Brennenstuhl (D.N. 122) are **ADOPTED** as modified in this Order and **INCORPORATED** by reference herein.

(2)     Doe's objections to the magistrate judge's recommendation (D.N. 123) are **OVERRULED**.

(3)     Dordoni's motion for summary judgment (D.N. 82) is **GRANTED**.

(4)     Doe's motion to strike (D.N. 125) is **DENIED**.

(5)     A separate judgment will be entered this date.

September 28, 2021

**David J. Hale, Judge**
**United States District Court**

13